## STILLMAN WILSON *vs.* GEORGE GILLIS & *al.*

Where an officer arrests a debtor on a writ, pursuant to the provisions of the *st.* of 1831, *c.* 520, and takes him before two Justices of the peace, and of the quorum, it is the duty of such officer to detain the debtor under arrest until he shall be discharged by the Justices, or be again committed to his custody by their mittimus.

It is the duty of the officer having the debtor in his keeping under the mittimus, to release him on his giving to such officer a sufficient bond, conformable to the provisions of the statute, running to the creditor.

The officer's return of these proceedings on the writ is legal evidence of the facts, in a suit upon the bond.

Where there has been a breach of the condition of such bond, the damage actually sustained is the proper and equitable measure of the claim of the creditor.

DEBT on a bond, dated *Oct.* 7, 1834. On the same day, *Gillis* was arrested on a writ in favor of the plaintiff, and taken before two Justices of, &c. but refused to disclose the state of his business affairs, and the Justices made out a mittimus directing him to be committed to prison, and delivered the same to the officer making the arrest, who had *Gillis* in custody. He then gave the bond declared on and was discharged by the officer, who returned on the writ that he had arrested the defendant and had him before two Justices, &c. and that " the Justices having ordered the within named *Gillis* to be imprisoned, I have taken a bond agreeably to the provisions of the law for the abolition of imprisonment of honest debtors for debt, which bond is enclosed." This was the bond in suit. The bond recited these facts, and the condition was, " if the said *Gillis* shall notify said creditor within fifteen days after

final judgment in said action, if such judgment shall be against said *Gillis*, to attend to the making of a disclosure by said *Gillis*, according to the provisions of an act (describing the *stat.* of 1831, *c.* 520,) and shall, in pursuance of said notice, attend and make a disclosure of his business affairs, and all and every description of property, as required by the act aforesaid," &c. Judgment was obtained against *Gillis* in the original suit, for $448 damages, and $11,91 costs. *Gillis* took no measures to notify the plaintiff or to disclose the state of his affairs after judgment, although several months had elapsed before this suit was brought.

The counsel for the defendant objected, that the action could not be maintained. He offered evidence to show, that *Gillis*, at the time of the arrest, and for more than fifteen days after the judgment, was insolvent, and insisted, that in such case the damages should be but nominal. This testimony was objected to but admitted by the Judge. Evidence was introduced, tending to show, that *Gillis* was, and was not, insolvent. The jury were instructed by SHEPLEY J., before whom was the trial, to ascertain and return with their verdict the actual damages which the plaintiff had suffered by reason of the neglect to perform the condition of the bond. They found the amount to be $150. If the plaintiff was entitled to recover, the Court were to determine the amount, and whether the evidence objected to was admissible ; and if the action could not be maintained, were to set aside the verdict, and order a nonsuit.

*Rogers* argued for the defendants, and cited *stat.* of 1821, *c.* 520 ; 1 *Hawkins, c.* 28, § 19 ; 1 *Russell on Crimes,* 508 ; and *Gowen* v. *Nowell,* 2 *Greenl.* 13.

*F. H. Allen* argued for the plaintiff, commenting on the different sections of the statute, and cited *Clap* v. *Cofran,* 7 *Mass. R.* 98 ; *Freeman* v. *Davis, ib.* 200 ; and *Bartlett* v. *Willis,* 3 *Mass. R.* 86.

After a continuance, the opinion of the Court was drawn up by

WESTON C. J. — The principal defendant was arrested on mesne process, in virtue of the twelfth section of the *stat.* of 1831, *c.* 520, in relation to imprisonment for debt. That section does not prescribe the mode, in which the order of the Justices shall be verified,

where the order is, that the party under arrest shall be imprisoned, and he gives bond to procure his liberation. The original order, un= der their hands, is adduced in evidence ; and we perceive no reason why it should not be regarded as sufficient, there being no express provision, requiring any special mode of proof.

It has been contended, that the return of the officer, as to the order of the Justices, and the bond thereupon taken, ought not to have been received in evidence. That his duty under his precept was discharged, when he carried the party arrested before the Jus- tices, and that his return of further proceedings was unofficial and unauthorized. We think otherwise. It was the duty of the offi- cer, to detain him under arrest, until his discharge therefrom was or- dered by the Justices. They were not charged with the security of his person. This devolves upon the officer, who is to hold him under arrest, until he is otherwise disposed of by order of law. If his imprisonment is ordered, the Justices are required to issue their mittimus for this purpose, if he does not give the bond, which the statute authorizes. If he does give bond, the statute does not prescribe who shall receive it. We think however, that it may be lawfully and properly taken by the officer, running to the credi- tor, and received for his use. Indeed the officer could not be justi- fied in continuing the arrest, after the tender of an adequate and sufficient bond. We hold it then to be his duty, to return upon his precept, not only that he had made the arrest required, but what had become of his prisoner. That he had carried him before two Justices of the Peace and of the quorum, and had discharged him upon their order, or had upon their order imprisoned him, having a mittimus for that purpose, or had liberated him, upon his giving the bond required by law, as the case might be.

The penalty of the bond having become forfeited, by breach of the conditions, the plaintiff is entitled to execution, for so much as in equity and good conscience, he ought to have. His counsel in- sists, that it should be for the amount of the execution and interest, as was allowed on jail bonds for the liberty of the yard, and as is awarded against bail. Formerly jail bonds were not subject to be chancered, and when that was permitted, execution was to issue in no case for an amount less than the original debt, cost and interest. And when bail are charged, they are to satisfy the judgment against

their principal out of their own estate, by an express provision of the statute, regulating bail in civil actions. The amount, for which execution shall issue, upon the forfeiture of such a bond as is now before us, is not limited or regulated by statute, so that the damage actually sustained is the proper equitable measure of the plaintiff's claim. This the jury have settled, and he must have judgment accordingly.

When the Justices refused to discharge the principal defendant, and ordered his imprisonment, the officer was justified in affording him a reasonable time to procure a bond for his enlargement, and his detention for this purpose was lawful. He should have prepared and tendered a bond in conformity with the statute. If the bond in suit is liable to exception as a statute bond, it was freely and voluntarily executed on his part, and he derived from it the benefit he sought. And it seems to us that it may be regarded as a bond good at common law. It may be sustained as such, according to the case of *Winthrop* v. *Dockendorff & al.* and the cases there cited.